UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

| | | |
|---|---|---|
| DAVID WAYNE SULLIVAN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 12-31-ART |
| | ) | |
| v. | ) | |
| | ) | **ORDER** |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

The plaintiff, David Wayne Sullivan, brought this action under 42 U.S.C. § 405(g). R. 1. Sullivan seeks judicial review of the Commissioner's decision denying him benefits. Because substantial evidence in the record supports the Administrative Law Judge's (ALJ) decision, Sullivan's motion for summary judgment, R. 7, is denied and the Commissioner's motion for summary judgment, R. 8, is granted.

## BACKGROUND

Sullivan filed applications for disability insurance benefits and supplemental security income on January 21, 2009. Tr. 157. He claimed that he was unable to work because he underwent chemotherapy to treat cancer on his upper lip, which resulted in disfigurement of his face. Tr. 175. The Social Security Administration denied Sullivan's application, Tr. 76, and his request for reconsideration, Tr. 82. Sullivan then sought a hearing before an Administrative Law Judge (ALJ), which was held on June 30, 2010. Tr. 36–66. Applying the traditional five-step analysis for Social Security decisions, *see Jones v. Comm'r of Soc.*

*Sec.,* 336 F.3d 469, 474 (6th Cir. 2003); 20 C.F.R. § 404.1520; 20 C.F.R. § 404.920, the ALJ found as follows:  (1) Sullivan had not engaged in substantial gainful activity since his alleged date of disability.  (2) Sullivan had severe impairments consisting of status post carcinoma of the lip and morbid obesity.  (3) The impairments did not meet or equal one of the Commissioner's listings of impairment, whether considered singly or in combination.  (4) Sullivan retained the residual functional capacity (RFC) to perform a reduced range of light level work, but was unable to perform his past relevant work.  (5) During the period from February 29, 2008, through June 30, 2010, Sullivan's extensive treatment for lip cancer and frequent doctors' visits prevented him from performing any jobs existing in significant numbers in the national economy.  The ALJ therefore awarded him a closed period of benefits for the period he could not work: February 29, 2008, through June 30, 2010.  Tr. 23–26.  But, by June 30, 2010, the ALJ found Sullivan had healed enough to seek gainful employment.  Tr. 21–24.

At the fifth and final stage of the ALJ's evaluation, she elicited testimony from a vocational expert.  The ALJ asked the vocational expert if a person of Sullivan's age, education, and work experience could perform certain jobs existing in the national economy if he were limited to light level exertion, occasional climbing and crawling, no close interaction with coworkers or the general public, and no requirement for a clear speaking voice more than occasionally.  Tr. 64–65.  The vocational expert affirmed that numerous jobs were available for such a person.  Tr. 65.  But he could only be absent ten to twelve times a year because employers rarely tolerate more absences.  Tr. 66.  *Id.*  Since Sullivan's treatment was complete by July 1, 2010, absences were not a worry.  Tr. 25–26.

Indeed, all of the evidence indicated that Sullivan did not need further treatment. First, Sullivan's plastic surgeon, Dr. Michael Stefan, indicated in his notes in January 2010 that Sullivan did not need further surgery. *Id.*; Tr. 425. In fact, Dr. Stefan opined that Sullivan's lip was "doing fine" and that Sullivan had decided to forego hyperbaric oxygen therapy for his lip. Tr. 425; *see also* Tr. 25. Dr. Stefan never mentioned another surgical procedure. So when Sullivan testified that Dr. Stefan had scheduled him for additional surgery in July of 2010, but canceled because he had to leave town, the ALJ gave greater weight to the treatment notes. Tr. 25. The ALJ reasoned that the treatment notes' failure to definitively schedule future surgery, coupled with the fact that Sullivan did not see Dr. Stefan after January, indicated no surgery was pending. *Id.* Second, the ALJ examined evidence provided by Sullivan's oncologist, Dr. Schrimpf. *Id.* Sullivan's PET scan for cancer in December of 2009 was negative, and Dr. Schrimpf found no evidence of recurring cancer in May of 2010. *Id.*; Tr. 462. The ALJ also noted that Dr. Schrimpf's notes from June of 2010 indicated that Sullivan's next visit would be in two months. Tr. 25; *see also* Tr. 461. The ALJ concluded that all the medical evidence in the record indicated that Sullivan's major treatments were complete. Tr. 25.

The ALJ therefore awarded a closed period of benefits beginning on February 29, 2008, and ending on June 30, 2010. Tr. 23–26. The Appeals Council denied Sullivan's request for review of the unfavorable portion of the ALJ's decision on February 21, 2012, Tr. 1–3, and this action followed.

## DISCUSSION

Sullivan raises one issue in this appeal: whether the ALJ erred in finding that Sullivan's treatments had slowed enough for him to be employable starting on July 1, 2010.

R. 7-1 at 5–7.   The Court reviews the ALJ's decision to determine whether "substantial evidence" supports her conclusion.   Substantial evidence is proof that "a reasonable mind might accept as adequate to support a conclusion."   *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted).   The ALJ's decision easily meets that standard.

All the objective evidence before the ALJ indicated that Sullivan was not disabled after June 30, 2010.   The bulk of the evidence in the record from treating physicians indicated that Sullivan was progressing well and would not require surgery or extensive treatment beyond June 30, 2010.   *See* Tr. 25.   The records from Sullivan's treating physicians were the most objective evidence of what treatment he was slated to receive.   So the ALJ could rightly give the treatment notes greater weight than Sullivan's personal testimony.   *Cf.* 20 C.F.R. § 404.1527(d)(2) (treating physicians' opinions should be given controlling weight when they are "not inconsistent with the other substantial evidence"); *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) ("The Social Security Administration gives the most weight to opinions from a claimant's treating source . . . .").   And because all the medical evidence indicated that Sullivan would not require extensive treatments in the future, the ALJ could rely on the vocational expert's determination that sufficient jobs were available for a person with Sullivan's skills and physical restrictions.   *See* Tr. 25–26, 65–66; *see also Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 246–47 (1987).   Thus, substantial evidence supported the ALJ's determination that Sullivan was no longer disabled.   *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994) (an ALJ may rely on a vocational expert's answer to hypothetical questions so long as substantial evidence supports the assumptions included in the hypothetical question).

Sullivan's challenge to the ALJ's decision misses the mark.  He frames his appeal as if the only issue before the ALJ was whether Sullivan would be having additional surgeries.  *See* R. 7-1 at 6–7.  According to Sullivan, the fact that he did have another surgery means the ALJ erred.  *Id.* at 7.  That is inaccurate.  The ALJ's ultimate conclusion, the one that the Court reviews under the substantial evidence standard, *see Ealy*, 594 F.3d at 512, was that Sullivan was able to work starting on July 1, 2010, *see* Tr. 26.  To undermine that conclusion, Sullivan has to do more than just show that he would have another round of plastic surgery.  He must identify evidence in the record showing that he would miss more than the "10 to 12 days per year" the vocational expert said employers would allow.  Tr. 66; *see also Felisky*, 35 F.3d at 1036.  He has not done that.  For example, he has not demonstrated that any probable plastic surgery would cause him to miss that much time.  He identifies only several pages in the record that refer to his scheduled surgery with Dr. Stefan on July 12, 2010, *see* R. 7-1 at 6, a surgery that was cancelled, s*ee* Tr. 514.  Sullivan does not point to anything in the record that shows how plastic surgery would affect him, how extensive his recovery would be, how many office or hospital visits it would involve, or how long the healing process would take.  In short, the record does not contain an evidentiary basis for questioning the ALJ's conclusion that Sullivan would not miss more than the ten to twelve days per year.  *See* Tr. 25–26, 65–66.

What's more, Sullivan's only basis for claiming disability beyond June 30, 2010, was that his additional surgeries would cause him to miss work.  *See* R. 7-1 at 6–7.  But he did not have an additional surgery until nearly a year later in May of 2011.  *See id.* at 6; R. 7-2 at 4–6.  Since that surgery occurred more than seven months after the ALJ's decision, *see* R. 7-2, evidence of the surgery was not in the record before the ALJ.  A district court can remand

the case for further proceedings based on evidence that was not before the ALJ only if the evidence is new, is material, and there was good cause for not presenting the evidence earlier. *See Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993) (citing 42 U.S.C. § 405(g)). Since the evidence of additional surgeries does not speak to Sullivan's abilities from July 1, 2010 until May 12, 2011, *see* R. 7-2, it is not material to the ALJ's decision.

The ALJ concluded that Sullivan's period of disability started in February of 2009 and ended on June 30, 2010. *See* Tr. 23–26. So, even if plastic surgery did render Sullivan unable to work, having surgery in May of 2011 would not affect that conclusion.   Rather, Sullivan was able to work from July 1, 2010, until his surgery in May of 2011 and thus was not eligible for benefits.  The May 2011 surgery–assuming it disabled Sullivan—created a new period of disability; one distinct from the period that the ALJ addressed.  *See* 20 C.F.R. § 404.1598 ("If a new severe impairment(s) begins *in or before the month in which your last impairment(s) ends*, we will find that your disability is continuing." (emphasis added)); *see also Nierzwick v. Comm'r of Soc. Sec.*, 7 F. App'x 358, 360 (6th Cir. 2001) (affirming ALJ's decision that the claimant was no longer disabled when substantial evidence indicated that claimant's medical improvements allowed him to return to work).  The plastic surgery issue therefore does not provide a basis for questioning the ALJ's conclusion.

## CONCLUSION

Accordingly, it is **ORDERED** as follows:

(1)    The plaintiff's motion for summary judgment, R. 7, is **DENIED;**

(2)    The defendant's motion for summary judgment, R. 8, is **GRANTED**; and

(3)    **JUDGMENT** in favor of the defendant will be entered contemporaneously with

this Memorandum Opinion and Order.

This the 30th day of October, 2012.

Signed By:

*Amul R. Thapar* $\mathcal{AT}$

**United States District Judge**